# SUPREME COURT.

WM. PATTEN and others agt. THE ACCESSORY TRANSIT COMPANY, CORNELIUS VANDERBILT and others.

*Preliminary injunctions*, and *orders appointing receivers*, should be granted with *great caution*, and only in cases of *pressing apparent necessity*.

An order in favor of a judgment-creditor, plaintiff, which *not only enjoins*, in effect, a defendant from making any use or disposition of the property in suit of the judgment-debtor, but actually divests the defendant of the possession, and orders the property to be given up to the *receiver*, will be *vacated and set aside*, where it appears that the defendant is a prior mortgagee, and having, by forfeiture of the mortgage, and by express agreement with the owners of the property, a *vested right* to the *possession* of such property.

Especially will the defendant be protected in his possession, where he has a much larger claim to secure than the plaintiff, and offers ample security to indemnify the plaintiff.

*New-York General Term, March,* 1857.

MITCHELL, ROOSEVELT and DAVIES, *Justices.*

APPEAL from an order granting a preliminary injunction, and appointing a receiver.

Patten and others agt. The Accessory Transit Co., Vanderbilt and others.

C. A. RAPALLO, HORACE F. CLARK, DANIEL LORD and FRANCIS B. CUTTING, *for defendants.*
FOSTER & THOMPSON, E. W. STOUGHTON and A. J. VANDERPOEL, *for plaintiffs.*

By the court—ROOSEVELT, Justice. The order appealed from directed, among other things, that " Edward P. Cowles, Esq., counsellor at law, upon filing an undertaking in the usual form, in the sum of $400,000, with approved sureties, be appointed receiver," and that, as such, to " receive *and take possession of* the four steamships, named respectively the *Northern Light*, *Star of the West*, *Daniel Webster* and *Prometheus*, and hold the same subject to the further order of this court," and that the parties to the action having possession of the vessels " do forthwith deliver up such possession to the receiver on demand."

This order was made not on a final and full hearing of the cause, but on an interlocutory motion, founded merely on written affidavits, or papers used as such, for the purpose. And yet, it not only enjoins, in effect, the owners and mortgagees from making any use or disposition of the vessels—(for the consequences of which, had it been on the ordinary injunction, the plaintiffs would have been compelled, as a condition, to give ample security)—it not only enjoins the defendants, I say, but actually divests them of the possession of the property, and that, too, with no security, except for its safe custody, and with no averment besides, and with no suggestions, even of insolvency or other danger, should the ships continue as they were.

The whole claim of the plaintiffs, on which the possession and use of four costly steamships, of the value probably of more than a million, has thus summarily been disposed of, and subjected to an indefinite bill of expense, is less than $21,000.

On that claim—acknowledged simply as a debt—the plaintiffs commenced a suit, by attachment, against the company as a foreign corporation. This attachment, when served, gave the plaintiffs of course, or rather the sheriff, a lien on whatever interest the company had at the time in the ships; and on the strength of such lien, and to give it greater effect, they insti-

tute, not in the sheriff's, but in their own name, the present suit: thus carrying on two parallel proceedings in the court for the same demand.

As a justification for this seemingly vexatious double suit, they make certain statements in their second complaint. Vanderbilt, they say—through Morgan and Hoyt, as trustees— holds a mortgage on two of the steamers, to secure bonds past due to the amount of $120,000; and another directly to himself, on the four steamers, for advances claimed by him to the amount of "several hundred thousand dollars" more; and which they do not, in terms, deny, but simply say, that "they can form no opinion, or obtain any reliable or definite information relative to the amount of such advances, or the validity of said lien." This certainly, as a pleading, is no impeachment of the lien or its amount. The plaintiff's ignorance, where no effort has been made to obtain knowledge, is no ground of action.

It is further alleged, "that several creditors of the company, having recovered judgments on their demands, have issued executions requiring the sheriff to sell the interest of the company in the ships; that the ships, if they could be sold free of bond or incumbrance, would bring much more than enough to discharge all legal liens on them, including executions and attachments; but should the interest of the company in the *Northern Light* and *Star of the West* be sold, as intended by the sheriff, with the claims and liens on them, real or pretended, undefined, (and unknown except to the defendant Vanderbilt, and the transit company,) the same will not produce more than a nominal amount."

On this statement, made by the plaintiffs themselves, without any reference to the facts established by the defence, what pretence of claim is there for dispossessing Vanderbilt and the trust mortgagees of their security for the undisputed bonds for $120,000, at the instance and in favor of a general creditor of a subsequent date for $21,000? The bonds, it will be remembered, were mortgage bonds; they were issued and negotiated on the faith of the specific pledge of the two steamers, the *Star* and the *Northern Light;* and they " became due and payable,

as the bill states, (and the mortgage of course became forfeited,) on the 31st of March, 1856," nearly six months before the plaintiffs' attachment.

Possession, after forfeiture, constitutes the essential element of a chattel mortgage. It is the precise thing contracted for, the security on the faith of which the creditor usually makes his loan, and without which he would have retained his funds in his own hands. To deprive him of it, without just cause, is to impair the obligations of a valid contract, a proceeding beyond the constitutional power of the court, as well as of the legislature.

As to the other claims of Vanderbilt, it appears, by his answer, that on the 12th of June, 1856, the company, being indebted to him in the sum of $70,617, and requiring still further advances, gave him, as a security, another mortgage, covering all the four steamers, and with a provision in the instrument that, until fully re-imbursed, he should have " the possession, control and management of the four steamships," with authority to sell in case of default of payment on demand; and that, in virtue of such stipulation, he immediately took possession, and continued to hold it when this proceeding was instituted. He further alleges, that his advances, secured by the last mortgage, amount to $182,817, besides interest; and that he holds, in addition, thirty bonds of the company, past due, and amounting in the aggregate to $150,000; thus exhibiting an array of sworn demands, due to him by the company, of nearly half a million of dollars.

It then appears, without going into further details, that the plaintiffs occupy no better position in reference to the *Webster* and *Prometheus*, than they do in reference to the other two of the four steamers; and that the objection to a receivership, as a direct infringement of the defendant's vested rights, and as impairing the obligations of his contracts, is as strong in the one case as in the other.

Vanderbilt's solvency is not disputed. Of his ability to respond, should the plaintiffs, in the result, establish their claim, there is no question. And if there were, it is fully met by his

tender of security in double the value of the ships, or, if preferred, in the simple sum of $600,000, to abide the final judgment.   There is, therefore, not only no legal right, but no occasion for any arbitrary or summary interference by 'the court. Preliminary injunctions—receiverships, as already stated, are injunctions, and something more stringent still—are to be granted with great caution, and only in cases of pressing apparent necessity.   Their supposed too free use was one of the causes of the destruction of the late court of chancery, and if persisted in, it is feared, will ultimately end in their own destruction.

The order appealed from reversed.   Form of reversal to be settled by one of the judges.